**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| MICHAEL P. HUNT, | CIVIL CASE NO. 16-00043 |
| Plaintiff, | |
| vs. | **ORDER AND OPINION RE: MOTION FOR SUMMARY JUDGMENT** |
| GUAM POLICE DEPARTMENT, | |
| Defendant. | |

Before the court is Defendant Guam Police Department's Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56. ECF No. 19. After reviewing the parties' briefs and relevant cases and statutes, the court hereby **GRANTS** Defendant's motion for summary judgment for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### a. Procedural Background

On September 23, 2016, Plaintiff Michael P. Hunt ("Plaintiff") filed his Amended Verified Complaint. *See* ECF No. 15. Therein, Plaintiff alleges that Defendant Guam Police Department ("Defendant") violated the Age Discrimination in Employment Act ("ADEA"), when Defendant failed to employ Plaintiff for a position he applied for due to his age and when Defendant subsequently terminated Plaintiff in his existing position. *Id.* at 1, 3.

1

On June 26, 2017, Defendant filed the instant motion for summary judgment. *See* ECF No. 19.

**b. Factual Background**

On November 15, 2010, Plaintiff was selected as a Program Coordinator IV by Defendant. Plaintiff started the position on March 21, 2011. The position was entirely federally funded through the Recreational Boating Safety Program. Plaintiff resigned his position as the Program Coordinator IV on July 2, 2011, and took on the unclassified position of a Special Projects Coordinator effective July 3, 2011, which was a higher pay. The position was under the same boating program.

Defendant subsequently posted a job announcement to fill the vacated Program Coordinator IV position. On April 23, 2012, five applicants were interviewed. Plaintiff was one of them. The interviewing panel consisted of three members: Joseph S. Carbuillido, Ronald S. Taitano ("Taitano"), and Maurice J. Sayama. The interviewers rated each applicant and thereafter made a recommendation to the Chief of Police, Fred E. Bordallo, Jr. ("Bordallo"). Plaintiff was ranked second to the last out of the five interviewees, garnering a score of only 249. Applicant Ann Marie Cruz was ranked the highest, garnering a score of 292. Based on the interviewing panel's recommendation, Bordallo offered the position to Cruz with an original start date of May 14, 2012.

On May 10, 2012, the Bureau of Budget and Management Research questioned the funding sources for both the positions of the Program Coordinator IV, which Cruz was hired for; and the Special Projects Coordinator, which Plaintiff held. The Bureau of Budget and Management Research halted the processing of Cruz's employment until it received clarification on whether both positions will be federally funded, despite the overlapping duties of the two positions. Inquiries to the federal government were made to no avail.

On May 25, 2012, Plaintiff was informed of his termination effective June 22, 2012, due to lack of funding. Cruz was then processed with a new start date of June 26, 2012. At the time of hiring, Cruz was 39 years old. Plaintiff was 51 years old at the time of termination.

## II. JURISDICTION AND VENUE

Plaintiff's cause of action is within the court's jurisdiction pursuant to 28 U.S.C. §1331.

Venue is proper in this judicial district, the District of Guam, because Defendant is the Guam Police Department, an agency within the Government of Guam, and the events giving rise to Plaintiff's cause of action occurred in Guam. *See* 28 U.S.C. §1391.

## III. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A shifting burden of proof governs motions for summary judgment under Rule 56. *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment bears the initial burden of proving an absence of a genuine issue of material fact. *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets that burden, the burden then shifts to the nonmoving party to set forth "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. "The mere existence of a scintilla of evidence…will be insufficient" and the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 252; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Viewing the evidence in the light most favorable to the non-moving party, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

**IV. ANALYSIS**

ADEA provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. §623(a)(1). The prohibition is "limited to individuals who are at least 40 years of age." 29 U.S.C. §631(a).

The Ninth Circuit has applied the *McDonnell Douglas* burden-shifting framework to motions for summary judgment on ADEA claims. *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012). That is,

> [A] plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted). Very little is required to establish a *prima facie* case (*id.*), and the parties in the instant case agree that Plaintiff has established one. Plaintiff was over 40 years old; he was not hired for a position he was qualified to fill; and the person hired was younger than him. *See* Def. Mot., at 9, ECF No. 19; and Pl. Opp'n., at 3, ECF No. 21.

The burden now shifts to Defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Defendant states that it did not rehire Plaintiff for the Program

4

Coordinator IV position, because it found another person to be more qualified than Plaintiff. *See* Def. Mot., at 9, ECF No. 19. Cruz had seven years of prior experience as a Program Coordinator IV, unlike Plaintiff who only had less than six months of experience in that same position. *See* Wade Decl., Ex. C, F, and J, ECF No. 20-5. In addition, Plaintiff was ranked second to the last out of five interviewees during an interview by a three-member panel. *See* Wade Decl., Ex. J, ECF No. 20-5. Cruz was ranked the highest during the interview. *Id.* Finally, while the position falls under the Recreational Boating Safety Program, the position itself did not require specialized knowledge in boating and boat safety. *See* Schniep Decl., at ¶ 8, ECF No. 20-1; and Wade Decl, Ex. H, ECF No. 20-5. It only required "[f]our (4) years of experience in planning, developing, coordinating or implementing of programs or projects[,]" particularly as it relates to federal grants and programs. *See* Wade Decl., Ex. H, ECF No. 20-5.

On the issue of terminating Plaintiff, Defendant states that when the Program Coordinator IV position was filled, it created an overlap between the job duties of the Program Coordinator IV and the Special Projects Coordinator. *See* Quitugua Decl., at ¶ 9, and Ex. A and B, ECF No. 20-2. As such, there was uncertainty as to whether federal funding would be available for both overlapping positions. *Id.*

Based on the evidence, the court finds that Defendant has presented a legitimate, nondiscriminatory reasons for not choosing Plaintiff for the positon of Program Coordinator IV and for subsequently terminating Plaintiff from the position of Special Projects Coordinator.

At this point, the "presumption of unlawful discrimination simply drops out of the picture." *Wallis*, 26 F.3d at 889 (internal quotation marks and citation omitted). Thus, to survive summary judgment, Plaintiff must demonstrate that there is a material genuine issue of fact as to whether Defendant's purported reason is pretext to age discrimination. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000). Plaintiff can prove pretext "(1) indirectly, by

showing that the employer's [defendant's] proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Shelley*, 666 F.3d at 609, citing *Chuang v. Univ. of Cal. Davis, Bd. Of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000). The ultimate burden of proof remains always on the plaintiff to show that the defendant intentionally discriminated because of the plaintiff's age. *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420-21 (9th Cir. 1990).

In arguing that Defendant's proffered reason is pretextual, Plaintiff alleges the following: (1) on March 24, 2011, Sayama questioned Plaintiff's loyalty with GPD and referred to Plaintiff as an "old guy" who "would move on as soon as a better job came along"; (2) age-related comments by others at GPD; (3) in a memorandum dated May 6, 2011 from Bordallo, Bordallo applauded Plaintiff's "work experience and exceptional qualifications" for the position; (4) on April 24, 2012, Sayama misled Bordallo in stating that Cruz is the only applicant who had previously held the position of Program Coordinator IV and did so for seven years; (5) that it was not noted to Bordallo that Cruz had not held the position of Program Coordinator IV at the time of her application; (6) Bordallo's selection of Cruz was based solely on the interview recommendation of the three-member panel, ignoring "other criteria required in making the selection including the rating of the applicants' application"; and (7) his termination was not due to funding issues, because there continued to be carryover and unobligated funds in the State Recreational Boating Safety Program. *See* Pl. Opp'n., at 1-2, ECF No. 21; and Hunt Decl., at 1-2, ECF No. 22.

The court will first address the age-related comments. Plaintiff alleges that on March 24, 2011, Sayama called him an "old guy." Hunt Decl., at 1, ECF No. 22. Sayama denies making this comment. Sayama Decl., at 2, ECF No. 23-1. Assuming *arguendo* that such comment was

6

made, this single comment was made 13 months *prior* to Defendant's decision not to hire Plaintiff for the Program Coordinator IV position, and 14 months *prior* to Plaintiff's termination as a Special Projects Coordinator. *See* Wade Decl., Ex. L and M, ECF No. 20-5. There is no evidence in the record, direct[1] or otherwise, which links this over-a-year-old one-time "old guy" comment by Sayama with Defendant's decision not to rehire Plaintiff as a Program Coordinator IV and to subsequently terminate Plaintiff from his existing Special Projects Coordinator position. Such comment is evidence of discrimination *only if* it was made around the time of and in reference to the adverse employment action. *See Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 576 (7th Cir. 2003). That is not the case here. It is also worth noting that Sayama is just two years younger than Plaintiff. Sayama Decl., at 1, ECF No. 23-1.

Aside from the lack of proximity in time, the court also views this as a "stray" comment, a comment which fails to show discrimination because it is unrelated to the employment decisions at issue. *See Markey v. Kudelski S.A.*, 2008 WL 65401, at * 10 (S.D.Cal. Jan. 3, 2008) (citing *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990). For example, in *Nesbit v. Pepsico, Inc.*, a supervisor commented during a meeting that "[w]e don't necessarily like grey hair." 994 F.2d 703, 705 (9th Cir. 1993). The Ninth Circuit found this "comment was uttered in an ambivalent manner and was not tied directly to Nesbit's termination." *Id.*

Plaintiff also alleges that "throughout [his] employment at GPD, there were a number of comments made by employees both GPD officers and civilians regarding [his] age and [him] being an 'old guy'." Hunt Decl., at 1, ECF No. 22. However, Plaintiff admits that he viewed the comments as "jokes and laughed them off[.]" *Id.* at 2. Even assuming that he was offended by such comments, a statement that is not made by a decision-maker (*e.g.*, coworkers) requires the

---

[1] "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998), *as amended* (Aug. 11, 1998) (citation omitted).

plaintiff to establish a nexus between the alleged discriminatory statement and the adverse employment decision. *See Selby v. Pepsico, Inc.*, 784 F.Supp. 750, 757 (N.D. Cal. 1991) (quoting *DeHorney v. Bank of America Nat. Trust and Sav.*, 879 F.2d 459, 468 (9th Cir. 1989)). Plaintiff has not established that nexus here.

Next, the court will address the hiring of Cruz. Plaintiff questions Defendant's decision in hiring Cruz, because Cruz does not have experience or knowledge on boating or boating safety. *See* Pl. Opp'n, at 4, ECF No. 21. A thorough review of the job announcement for Program Coordinator IV shows that the position does not require any experience or knowledge on boating or boating safety. *See* Wade Decl., Ex. H, ECF No. 20-5. It only requires "[f]our (4) years of experience in planning, developing, coordinating or implementing of programs or projects[,]" particularly as it relates to federal grants and programs. *See* Wade Decl., Ex. H, ECF No. 20-5. Cruz had seven years of experience as a Program Coordinator IV, unlike Plaintiff who only had less than six months of experience and who actually did not meet the required four years of experience (Plaintiff occupied the position of Program Coordinator IV from March 21, 2011 through July 2, 2011). *See* Wade Decl., Ex. C, F and J, ECF No. 20-5. While Plaintiff may have been the best qualified and available[2] candidate at the time of his original hiring in 2010,[3] he was no longer the best qualified candidate in the 2012 hiring. During the April 23, 2012 interview by a three-member panel, Plaintiff was ranked second to the last out of the five interviewees.[4] *See* Wade Decl., Ex. J, ECF No. 20-5. Cruz was ranked the highest during the interview and as a

---

[2] The court notes that the Program Coordinator IV position was actually offered to another candidate in 2010. However, said candidate declined and thus, the position was subsequently offered to Plaintiff. *See* Ex. B, ECF No. 23-1.

[3] Plaintiff was selected by GPD as a Program Coordinator IV on November 15, 2010, but Plaintiff's start date did not become effective until March 21, 2011. *See* Wade Decl., Ex. A and C, ECF No. 20-5.

[4] Taitano, one of the three-member interviewing panel, states that he "specifically recall interviewing another applicant who was older than [Plaintiff, and Taitano] recall that applicant scoring higher than [Plaintiff] on the interview rating." Taitano Decl., at 2, ECF No. 20-3.

8

result, the interviewing panel recommended her for the position. *Id.* Bordallo, having the sole and final discretion on who to hire, based his selection of Cruz on the panel's recommendation. *See* Bordallo Decl., at 2, ECF No. 20-6. Bordallo has never met Cruz prior to the selection. *Id.*

When the interviewing panel made its recommendation, Plaintiff argues that Bordallo was misled because (1) the panel "ignor[ed] that Plaintiff had held a PCIV [Program Coordinator IV] position and had excelled in that position[;]" and (2) the panel did not inform Bordallo that Cruz "had not held a PCIV at the time of her application." Pl. Opp'n., at 2, ECF No. 21. The court finds no merit to these assertions. The memorandum in question does not go into specific details of each candidate's qualifications or lack thereof. Rather, it merely provides general information such as to when the interview occurred, the interviewers, and the ranking of each interviewee. *See* Wade Decl., Ex. J, ECF No. 20-5.

There is no evidence on the record that Defendant hired a less qualified applicant over the plaintiff. The court will not second-guess the reasonableness of the employer's judgment and as an appellate court aptly put it, "[o]ur role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 815 (1999), *abrogated in part on other grounds by Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014).

Finally, the court will address Plaintiff's argument that his termination was not due to funding issues. Plaintiff argues that "GPD took no action other than sending an email to determine whether funding could be used to continue to have a PCIV [Program Coordinator IV] and a Special Projects Coordinator[,] then after no response, Defendants [*sic*] modified the request and specifically requested only for funding during a transition until July 1, 2012." Pl. Opp'n., at 3, ECF No. 21. Additionally, Plaintiff argues that there are carryover and unobligated

9

funds in the State Recreational Boating Safety Program. *Id.* at 4-5, and Hunt Decl., ECF No. 22.

Again, the court will not second-guess the reasonableness of Defendant's business judgment when it decided to terminate Defendant due to lack of funding. The Program Coordinator IV and Special Projects Coordinator positions have overlapping duties. *See* Quitugua Decl., ¶ 9, ECF No. 20-2. On May 10, 2012 (four days prior to the original start date of Cruz), the Bureau of Budget and Management Research ("BBMR") questioned whether the grantor would continue to fund the unclassified Special Projects Coordinator position, specifically because "the program did not need both [Special Projects Coordinator and Program Coordinator IV positions]." *Id.*, Ex. A. In a meeting between BBMR and Bordallo, BBMR was left with the understanding that "the SPC [Special Projects Coordinator] was to move into the PC [Program Coordinator IV] position[.]" *Id.* And BBMR was concerned that the grantor is not aware that Defendant "will have two individuals for the same job." *Id.*, Ex. B. As such, BBMR informed Defendant that it will not continue with the employment processing of Cruz until it gets confirmation of funding for both positions. *Id.* Defendant contacted the State's Financial Coordinator to determine if the federal government would agree to fund both positions for the boating safety program.[5] *Id.*, at ¶ 12. However, despite follow up emails, Defendant was not able to get confirmation of continued funding for the Special Projects Coordinator position. *Id.*, at ¶ 13.

Cruz was set to start her position[6] but BBMR withheld the processing of her employment papers. Accordingly, rather than creating further delays in processing Cruz, Bordallo made a judgment call to proceed by switching the federal funding from the Special Projects Coordinator position to the Program Coordinator IV position, thereby ending the funding for Plaintiff's

---

[5] The request was later modified for transitional funding.

[6] Cruz's employment was to commence on May 14, 2012. *See* Wade Decl., Ex. K. However, it was pushed back to June 26, 2012. *Id.*, Ex. O and P.

10

position. *Id.*, at ¶¶ 14-15. There is no evidence that upon the termination of Plaintiff from his position as the Special Projects Coordinator, that Plaintiff was replaced with a younger employee or any employee for that matter, to occupy the same Special Projects Coordinator position. Rather, due to funding, the Special Projects Coordinator position was terminated.

When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). That is, the plaintiff's age must have "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Id.* Plaintiff has not shown that his age played a role in Defendant's decision not to rehire him for the Program Coordinator IV position and to subsequently terminate him from his Special Projects Coordinator position.

Further, as the Ninth Circuit has held, "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a *strong inference* arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996) (emphasis added). Here, there is a strong inference that there was no discriminatory motive. Bordallo hired Plaintiff on July 3, 2011, as the Special Projects Coordinator. *See* Wade Decl., Ex. G, ECF No. 20-5. On June 22, 2012, less than a year after Bordallo hired him, Bordallo terminated him. *See* Wade Decl., Ex. M, ECF No. 20-5. "From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." *Bradley*, 104 F.3d at 270 (citation omitted).

Viewing the evidence cumulatively, and in a light most favorable to Plaintiff, Plaintiff has failed to raise a genuine issue as to the legitimacy of Defendant's proffered reasons for not rehiring him as the Program Coordinator IV and for subsequently terminating him as the Special

Projects Coordinator.

## V. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is hereby **GRANTED**. The Clerk of Court shall enter judgment in favor of Defendant.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood
Chief Judge
Dated: Mar 31, 2018**